JACKSON v. DILLEHAY.

4-7871                                                  192 S. W. 2d 354

Opinion delivered February 4, 1946.

Rehearing denied March 4, 1946.

708

*Verne McMillen* and *Elton A. Rieves,* for appellant.

*Buzbee, Harrison & Wright* and *U. A. Gentry,* for appellee.

MINOR W. MILLWEE, Justice.   This suit involves the question whether appellees or appellants were duly elected directors of The Security National Life Insurance Company in the regular annual meeting of policyholders held at West Memphis, Arkansas, on January 10, 1945.

Appellees filed their complaint alleging they were duly elected directors at the meeting, and, at a directors' meeting held immediately following the policyholders' meeting, that three of appellees were elected officers as follows:  G. L. Dillehay, president; F. S. Hubbard, vice-president; and Florence V. Dillehay, secretary and treasurer.  It was also alleged in the complaint that appellants claimed and asserted that they were elected directors at said meeting and purported to hold a directors' meeting immediately thereafter in which three of appellants were elected officers as follows: G. L. Jackson, president; E. M. Jackson, vice-president; and Charles J. Upton, secretary and treasurer; that the proxies held by G. L. Jackson, representing 6,974 votes by which appellants claimed to have been elected directors, were void for the reason same were not executed and filed in the manner and within the time required by the by-laws of the company; that the 6,601 proxies voted for appellees were filed and executed as required by the by-laws and appellees received a majority of the votes cast at said directors' election and were, therefore, the duly elected and acting directors and officers of the company.  The complaint contained a prayer for a temporary order enjoining appellants from interfering with the control and

operation of the company by appellees, pending a final hearing.

Appellants, in their answer, denied the invalidity of the proxies voted at the election by G. L. Jackson, and denied the validity of the proxies voted by appellee Dillehay. They also alleged that they were the duly elected directors and officers of the company and prayed that the election of appellees be declared null and void, and that appellees be enjoined from interfering with the control and operation of the company by appellants.

At a hearing on appellees' prayer for a temporary order all of the parties were enjoined from interfering with the control and operation of the company by the officers and directors in control prior to the election of January 10, 1945, pending a final hearing of the cause. This board was composed of appellees, G. L. Dillehay, and F. S. Hubbard, and appellants, G. L. Jackson, and C. J. Upton. At a final hearing on February 28, 1945, appellees were declared to be the legally elected directors of the company in the election held January 10, 1945, and appellants were permanently enjoined from interfering with the control and operation of the company by appellees.

The Security National Life Insurance Company was organized in April, 1936, as a legal reserve mutual insurance company. Appellee, G. L. Dillehay, was president, and appellant, G. L. Jackson, was secretary and treasurer of the insurance corporation at the time of the January 10, 1945, meeting of the policyholders. Jackson had been with the company since September, 1936, and Dillehay since December, 1937. The business of the company had prospered under their efficient management and operation. G. L. Dillehay was elected a director and secretary-treasurer of the company in December, 1939. The board of directors at that time was composed of P. M. Harper, president; C. J. Upton, vice-president; and G. L. Dillehay, secretary-treasurer.

On January 13, 1940, a special meeting of the directors adopted an amendment to the by-laws offered by Secretary Dillehay which provided that any change in

the by-laws as to method of policyholders voting must be unanimous; and that a proxy issued on a form other than that contained in the application for insurance must be acknowledged before a notary public, and filed at least six months prior to any meeting at which it might be offered.

It seems to be undisputed that the company was in bad financial condition in 1940. Dillehay and Upton apparently concluded that such condition was attributable to the inefficient management of President Harper, and they proceeded to take steps to depose him. Letters dated June 25, 1940, were addressed to the three directors, signed by Upton as vice-president and Dillehay as secretary-treasurer, giving notice of a meeting of the board to be held on July 3, 1940. The minutes of the July 3rd meeting, which was attended by Dillehay and Upton, recite the giving of due notice of said meeting to all directors and passage of a resolution rescinding the amendment of January 13, 1940. Another resolution was adopted at this meeting authorizing the secretary to give notice of a special meeting of policyholders to be held July 27, 1940, for the purpose of removal of a director and election of an additional director, and to amend or repeal such by-laws as deemed expedient. The minutes were signed and approved by the attending directors, Upton and Dillehay.

Following the meeting of July 3, 1940, Dillehay, Upton and Jackson proceeded to procure proxies to themselves to be used at the meeting of policyholders called for July 27, 1940. These proxies, which recited cancellation of any previous proxies, were attached to a notice of the time, place and purpose of the meeting which was signed by Upton, as vice-president, and Dillehay, as secretary. These proxies were not acknowledged or filed in the manner prescribed by the amendment to the by-laws of January 13, 1940. At the policyholders' meeting of July 27, 1940, Harper was removed as president and director, and Jackson was elected a director by a unanimous vote of the policyholders present and those represented by 6,892 proxies made to Dillehay, Jackson and Upton. Following this policyholders' meeting Dillehay

was elected president and Jackson, secretary-treasurer, in which capacities they served until this controversy arose.

In May, 1944, G. L. Jackson's induction into the armed services appeared imminent and a controversy arose between Dillehay and Jackson as to the latter's status with the company in the event he should be drafted for military service. Jackson became convinced that his continuance in a responsible capacity with the company was in jeopardy. The testimony of C. J. Upton indicates that such apprehension on Jackson's part was probably justified. Jackson immediately began procuring the 6,974 proxies of policyholders which he voted in the meeting of January 10, 1945. These proxies were valid under the original by-laws, but were not acknowledged or filed six months prior to the policyholders' meeting as provided in the amendment of January 13, 1940.

The original by-laws of the company, which were filed with the Insurance Commissioner, provide that a policyholder may vote in person or by proxy at all regular or special meetings and that special meetings may be called by the president, vice-president, secretary, or a majority of the board of directors upon proper notice. By section 1 of article III of the by-laws it is provided that a majority of the board of directors shall constitute a quorum for the transaction of business, and that special meetings of the board may be held at the call of the president or secretary after proper notice. Under article IV the duties of the respective officers are set out. By section 1 the president is empowered to call special meetings of members and directors and perform other duties that the board of directors may authorize and direct. By section 2 the vice-president shall perform the duties of the president in the latter's absence. By section 3 the secretary is again authorized to call special meetings of the members and directors and is charged with the duty of keeping the books and records of the company. Article VI of the original by-laws provides that same may be amended, added to, or repealed by vote of a majority of the directors at any regular or special meeting of the board.

A decision of the question as to which group of directors and officers was elected in the annual meeting of January 10, 1945, depends upon whether the by-law of January 13, 1940, was in effect at the time Jackson procured the proxies which he used at the policyholders' meeting. Assuming that the amendment of January 13, 1940, as to acknowledgment and filing of proxies, is valid, was this amendment repealed by the directors' meeting of July 3, 1940? This meeting was called by Secretary G. L. Dillehay and Vice-president C. J. Upton, and it is earnestly insisted by appellees that these men had no authority under the by-laws to call a special meeting of directors. Our attention is directed to section 1 of article IV which, in prescribing the duties of the president, provides that the president shall have power to call special meetings of the directors; but section 3 of the same article of the by-laws, which prescribes the duties of the secretary, authorizes the secretary to call special meetings of the members and directors. The authority to call special meetings of the directors is also lodged in both the president and secretary by section 1 of article III of the original by-laws. It is clear, therefore, that Secretary Dillehay had authority to issue the call for the special directors' meeting of July 3, 1940.

It is also contended by appellees that the meeting of July 3, 1940, was not a valid meeting of directors because President P. M. Harper was not properly notified of the meeting. This contention is based on the testimony of Dillehay that he did not mail the notice to Harper. It is clear from the testimony that notices to all directors were properly written and signed by both Dillehay and Upton. It was the duty of Dillehay as secretary to see that such notices were mailed and he stated, over his signature to the minutes of July 3, 1940, that all directors had been notified in the manner and form required by the by-laws of the company. At the meeting of July 3, 1940, a resolution was passed authorizing the calling of the policyholders' meeting of July 27, 1940, which resulted in the ousting of President Harper and his replacement by Dillehay, through the use of proxies of the type which appellees now say are void. All parties,

including the deposed Harper, acquiesced in the action taken. Dillehay is thus placed in the awkward position of now complaining of a failure to give notice which resulted either from his own negligence, or fraudulent misconduct, as secretary of the company. Under these circumstances he should not be heard to say the notice was not given, and we think a preponderance of the evidence shows it was given. See Thompson on Corporations, Third Ed., Vol. 2, § 1034, pp. 430-431.

The first provision in the by-law of January 13, 1940, is as follows: "Any change in by-laws as to method of policyholders voting must be unanimous." It is contended that this was a valid enactment which prohibited future directors from changing or repealing the by-laws except by a unanimous vote of all members of the board. It may first be pointed out that it is uncertain from the language used whether the above provision means a unanimous vote of all the directors, or whether it means only a unanimous vote of a quorum present at a meeting. Assuming that the former meaning was intended, was it within the power of the board of directors to control future actions of a majority of the board? The charter of the company provides that the company shall be managed by a board of directors, and article VI of the original by-laws filed with the Insurance Commissioner provides that such by-laws may be repealed by a majority vote of the board of directors. It is also provided in the original by-laws that a majority vote of the directors shall constitute a quorum for the transaction of business. The by-law of January 13, 1940, does not attempt to specifically repeal the aforementioned provisions of the original by-laws.

In 18 C. J. S., Corporations, § 188, p. 600, it is said: "A by-law assuming to take away or limit the power of the corporation to amend or repeal by-laws is inoperative, since the restrictive by-law itself is subject to amendment or repeal." In the case of *Richardson* v. *Union Cong. Soc.*, 58 N. H. 187, which is cited in support of the above statement, it was held that a by-law of a religious society which required a two-thirds vote to alter or repeal the by-laws, might be repealed by a majority

vote only. We think the reasoning of this case is sound, and that an attempt of one board of directors to tie the hands of the majority at a subsequent meeting is an unreasonable restriction upon the powers expressly granted to the majority by other provisions of the by-laws.

Since we have concluded that the by-law of January 13, 1940, was validly rescinded by adoption of the by-law of July 3, 1940, it follows that the proxies voted by appellant G. L. Jackson in the election of January 10, 1945, were validly executed under the by-laws of the company and appellants received a majority of the votes cast for the election of directors. In view of this holding we pretermit a discussion of other questions presented in the briefs, such as the applicability of Act 139 of 1925, and the validity of those provisions of the by-law of January 13, 1940, requiring the acknowledgment and filing of proxies at least six months prior to a meeting at which they are offered.

The decree of the trial court is reversed, and the cause remanded with directions to declare appellants to be the legally elected directors of the company at the election held by the policyholders on January 10, 1945, and for such further proceedings as are consistent with the opinion herein rendered.